Robert Wepner May it please the Court, counsel, I'm Robert Wepner and I represent the defendant appellant Archie Cabello. Under the Sixth Amendment to the United States Constitution, of course, a criminal defendant has a right to the assistance of counsel. Under the Sixth Amendment, a criminal defendant, of course, has the right to the assistance of counsel. A criminal defendant also has the right to represent himself upon a knowing, intelligent, and voluntary waiver of his right to the assistance of counsel. The interplay of these two rights is the heart of this case. The essential question before the Court really boils down to this. Whether a defendant may be held to have made a knowing, intelligent, and voluntary waiver of assistance or of either, I'm sorry, a knowing, intelligent, voluntary waiver of assistance of counsel or of his right to represent himself where he has not been properly advised of the consequences. Sotomayor So where do you think the error occurred here? O'Connell The error? Sotomayor Yes. If there is one. O'Connell The error I'm aiming for right now is Judge Jones's failure to conduct a Ferretta hearing despite the fact that even the prosecution asked him to do so. Sotomayor Didn't he conduct a Ferretta advisement? O'Connell I beg your pardon? Sotomayor Didn't he conduct a Ferretta advisement? O'Connell A very brief one, Your Honor. Sotomayor What was wrong with it? O'Connell Pardon me? Sotomayor What was wrong with it? O'Connell It didn't go into enough of the detail as to the kinds of things that Mr. Cabella was facing if he tried to represent himself. Just to take one example, the French case, which was cited by the prosecution, found an adequate Ferretta waiver, and just in that case, for example, the Court conducted a 5-hour Ferretta hearing over 2 days, whereas in this case the Ferretta hearing takes about a page of transcript, if that. There's no particular litany that's required, is there? Or is there? O'Connell I'm sorry, there's no what? Sotomayor Particular litany. There's no particular. O'Connell No. There is no script. You're right. Sotomayor Right. O'Connell You're right. Sotomayor Right. O'Connell But it does – there has been a – what has been disapproved is the Court making a sort of an airy, abstract announcement that there are rights that you may be giving up and dangers you may be facing. And but for a very few things, that's really all that Judge Jones did in this case. He was the person who, in fact, brought up the idea of Mr. Cabello proceeding for a say on the first case. Sotomayor So on the morning that that all happened, it turned out that it was a day of trial, correct? O'Connell That's correct. Sotomayor And later that morning, after he had – Judge Jones had the exchange with Cabello, he decided to plead guilty, right? O'Connell Yes. Sotomayor And he was still represented by counsel at that time. Judge Jones He still had counsel there to represent him. I don't know, Mr. Smith. Sotomayor He didn't enter his plea of guilty without the assistance of counsel, correct? O'Connell Because it was Mr. Smith, his lawyer, who had the written plea agreement with the handwritten interlineations and the like, and Mr. Smith, the attorney, did all of the discussion at that point. It sounded like Mr. Cabello says, nope, I've had a change of heart. I don't want to go forward with my trial. I'll enter into the plea. And then his lawyer took over from that. So I was just puzzled about how any – assuming there was a defect in the Feretta hearing, how it affected that particular interchange. O'Connell Well, that particular interchange, the adequacy of the plea is a separate issue. I was going to try to address simply the Feretta hearing and the Feretta advisement because that infects all the rest of the proceedings until the end of the criminal proceeding. Kagan Well, maybe you could explain that because if he didn't then plead guilty pro se, it's hard to understand how any defect in the Feretta hearing had any effect on his plea. So why don't you explain what the alleged defect, what impact that had? O'Connell Well, the alleged, the plea itself was defective in that it did not, excuse me, it did not show, it did not show on the record that the defendant was aware of the nature of the charges against him or aware of the maximum penalties for those charges. In fact, that is why there was a subsequent hearing scheduled by the prosecution. And going back to the Court's earlier concern as to the timing of the motion, I believe it was actually filed five days prior to the trial date, and Mr. Cabello had the motion for representation hearing. And Mr. Cabello had no input into scheduling that for the morning of trial. That's just when it got scheduled. But he actually brought that to the Court's attention prior to that. Robertson Now, he signed the petition to enter a plea, correct? O'Connell He did sign one, yes. Robertson And it, when it initially was presented to the Court, it only listed two counts. O'Connell That's correct. Robertson Right? And then it was, there were changes to it where they added in the other counts. So it was a total of eight counts to which he pleaded guilty, right? O'Connell There was a total of eight counts that were including the interlineations, yes. Robertson Now, the judge, well, asked him, did you read, you know, they went over the indictment. At some point they went over the indictment with him, correct? O'Connell Somebody went over the indictment with him? Robertson Yes, his lawyer. O'Connell Before his plea, his lawyer? I don't know that. Well, it says in the petition that he reviewed the indictment, correct? O'Connell What going over his indictment with him means is hard to tell. Robertson So is it your position that he didn't understand any of the charges that he was pleading guilty to? O'Connell He seemed to be ready to accept the fact that he had pleaded guilty to counts 1 and 51, and those were, in fact, the only ones that were reflected on the plea petition as originally prepared. But his, otherwise, his understanding can't be shown by the record, and that's why we have Rule 11, and that's why it's important for there to be an adequate plea hearing, which even the prosecution recognized and, in fact, basically begged the judge to perform. The reason that the Feretta hearing or non-Feretta hearing that was conducted is important in this case is because it was the only such hearing that was ever held and he continued to represent him in court and tried to withdraw his plea on a number of occasions and did not have the assistance of counsel, even though there is a reference in the record during the brief time that Mr. Levine was representing him that he could have helped him properly frame a withdrawal motion. Ginsburg As I understand, he really didn't begin to represent himself until after they had that status conference on the 27th of September. It was a shifting target. At the plea hearing, he was representing himself, then he unselfrepresented, and then who knows what happens after that. But I know that Mr. Smith at some point simply moved to Alaska and was no longer available, and although I'm not clear exactly when that was, all the pleading subsequent to the plea that were filed. I thought it was pretty clear about in November is when he really represents himself, was it November or December? November, I think. Your Honor, if I may. In November, Mr. Levine was appointed, correct? I beg your pardon? In November, Mr. Levine was appointed, but your client wanted to move, wanted to proceed post A. Okay. If I may, I'd like to preserve a little bit of time for rebuttal, if possible. Okay. That's fine. Thank you. May it please the Court. Tom Edmonds for the United States Counsel. Your Honors, there was no fair and just reason for the district court to grant the defendant's motion to withdraw his plea. The district court properly exercised its discretion. It did not abuse its discretion in denying that motion. In fact, the defendant's motion to withdraw the guilty plea was predicated on an argument that the defendant had been coerced to plead guilty, and that was refuted substantially by the record in this case. First of all, the September 17th plea colloquy made it very clear that the defendant voluntarily and intelligently pled guilty to the charges that day. That the jail telephone calls on that day and two days later made clear that the defendant wasn't coerced in any way to plead guilty, that he had chosen to do that. Those calls made it emphatically clear in the record of the case that the court acted upon when reviewing the motion to withdraw the plea that the defendant knew what he was doing, knew that he had pleaded guilty to eight counts, knew that he had tried to frustrate the process. In fact, he called it a gambit on his part to frustrate the process. He had no qualms at all about Mr. Smith, his lawyer, in those jail telephone calls. The only thing he was concerned about with Mr. Smith was whether he could get his clothing back. No criticisms of Mr. Smith. No reflection on the plea as one of coercion at all. That was the record before Judge Jones when he heard that motion. There is plain error review in this case as to that decision by the district court as well. When the district court did do the Ferretta waiver, I mean the Ferretta colloquy with Mr. Caban. Yes, Your Honor. He didn't advise him of, or I guess it was the government's lawyer, the U.S. attorney that was there, did not include in his explanation the financial penalties that were also associated with each of the counts. Isn't that correct? It was not a full explanation. It wasn't a full explanation, but only minutes later. I think it was count 15 as well. But only a few minutes later, Your Honor, the defendant forwarded a petition to the court that certified that he understood everything that was in that petition. He signed it. And included in that petition, Your Honor, was a full recitation of the penalties that were involved, the financial penalties and fines that related to each count. That's in the petition as well. The government takes the position that this is, under United States v. Bauer, one of the rare cases in which we can look at the totality of the circumstances to determine whether the Ferretta waiver was adequate, true? Yes, Your Honor. Isn't that position a concession that the hearing by itself, standing alone, was not adequate? No, Your Honor. The hearing and is the court's question directed to the Ferretta claim or to the pleas? The Ferretta claim. The Ferretta hearing was bifurcated by a number of parts, I would submit. The maximum penalties were read as part of the period of time before the plea, and then the plea itself included a recitation of the penalties. It also included Judge Jones' warning to the defendant, and I think the court has seized upon this issue that there's no talismanic prescription for how that's done. What is clear is it wasn't abstract at all. The defendant was put in the position of being told what it meant for himself to proceed on his own, and the court clearly advised him of the perils of appendix. It couldn't have been any clearer that that was a dire warning of the perils of self-representation for what the defendant was saying he wanted to do that day, which was go to trial on his own. And of course, that never materialized. You know, despite all the language in the petition, and I think you're right, when a defendant signs a petition like that and go over it with them, did you read this, did you sign it, I mean, you kind of think that the defendant understood what he was doing. But nonetheless, I noticed that, you know, a week later or ten days later, the government is a little bit concerned at a status conference about the adequacy of what took place on the 17th. Well, Your Honor, there was concern, and I want to address that issue. There is no defect whatsoever with the defendant's guilty pleas from the 17th as it relates to counts 1 and 51. And that's because those counts were addressed specifically with the defendant by their elements with the factual basis provided by the defendant's confession on the 17th. And indeed, the defendant himself on three occasions in the record of this case conceded that his pleas on counts 1 and 51 were good, twice at the motion to withdraw hearing and once during sentencing. He repetitively said that. His full understanding of the maximum penalties was assured to the district court in the course of the plea colloquy when the defendant said he understood the maximum penalties that existed in the case. The nature of the charges, he assured the court that he understood. And so the record is clear on the September 17th hearing. When it came to the 27th, there were concerns as it related to the other counts in the indictment, the six counts that involved false statements on credit applications and the tax count. And that hearing did provide further basis for the factual basis on those pleas as well as full notice to the defendant about the maximum penalties that related to those charges. Didn't he say, I'm not going to agree or resign anything additional at that second hearing? He said, I stand on the agreement from the first hearing. So does that have any effect at all, the second hearing? I submit, Your Honor, that the record shows that the defendant's lawyer, Mr. Smith, told the court that the defendant stood on the pleas that had been entered on the 17th and that he did not want to agree to anything else being included in that process. Nevertheless, his position, I think, is important because Mr. Smith told the court that the defendant did not want to withdraw his plea at that point and that he was satisfied fully with the eight guilty pleas that he had entered on the 17th. But where the record of the 27th is important is that it completes the record on the factual basis that the court was finding, which can be made anywhere in the course of the case. That's clear in the case law, that the factual basis can be found all the way up to judgment, which, in fact, there was a substantial basis for that in the record of this case. It included the testimony of the defendant's wife and his son that amplified the full spectrum of the conspiracies that had taken place for almost 20 years. And so the Ferretta problem that I think this the court addressed includes the totality of the record. And I submit that when one looks at the totality of the record here, there was full amplification of the nature of the charges for the defendant, there was full amplification of the maximum penalties and of the perils of going forward before the defendant went pro se. And that did not occur, Your Honor, until November 15th of 2012, almost two months after the guilty pleas had been entered. There's distortion with the defendant's appeal in that the request is for reversal of the convictions in return to the trial court. The Ferretta issues only relate to what happened after those guilty pleas and the convictions had been entered. And I submit that the defendant's eyes were wide open to the perils of self-representation for the purposes of going forward. On the issue of perils, the appellant in his brief, and I'm sorry that I don't have a reference handy for you, but makes a list of the things from what the appellant says would be somewhere between an adequate and an optimal Ferretta advisement that are not there. For example, he says a specific reference to the existence of rules, a lawyer knows the rules, you won't know the rules, that sort of thing. If we were to make, try to make clearer law on this issue of what constitutes a valid Ferretta waiver because both sides have acknowledged that there isn't a set script, what would we say about the things that were missing from this judge's advisement, that they're not necessary, that, what would we say? Well, I think the reason that there is no set script, Your Honor, is that every case has its individual facts. And because the totality of the record here gets considered, one has to look at who the individual defendant was. And in this case, the individual defendant was Archie Cabello, who was heavily involved in his own case. He showed up to court on the 17th of September ready to litigate issues that you rarely hear defendants trying to litigate on their own, showing knowledge of the government's trial memorandum, the indictment, specific statutes. So that individual person and for that person, the perils of self-representation were made abundantly clear by Judge Jones in this case. And I submit that the checklist that he used, if you want to call it that, was sufficient for what was going to happen that day. It didn't look like he was following a checklist because, indeed, the Assistant United States Attorney who was present there said, we should probably take a half hour or 20-minute recess and stand back and take a look at the waiver. Well, Your Honor, my focus a moment ago was on the perils warning, which I believe was what the court was asking. It does.  And the judge was concerned that the jurors were outside, you know, were down in the juror waiting room waiting to be called up for purposes of selecting a jury, and things were happening. And, you know, it would be too expedient at times. And I'm sure if he had taken a few minutes and stepped back, you probably would have come back and added to the admonition or the advisement that was given to Mr. Cabello. I submit that under the situation that existed in the case at the time, that the warning was sufficient and it was rendered somewhat moot by the fact that only moments later the defendant continued with his counsel who certified that he was appearing with the defendant for the purposes of the guilty plea. Isn't it still important, though, because later my recollection is that when Mr. Cabello went, pro se, what the trial court said was essentially, I'm not going to advise you again because I already did that. Well, Your Honor, it did go something like that, but the defendant told him that he didn't need to be warned any further. And I submit that on the record we have in this case, particularly with Mr. Levine's statement to the Court that day that the defendant wanted to be the captain of his own ship, that it's fully clear that the defendant had his eyes wide open to the issue of self-representation and wanted to do that to the exclusion of any assistance from counsel. He had three lawyers. But doesn't a trial court, you know, if someone hasn't been advised of something, how can they knowledgeably and meaningfully say, you don't need to tell me about it? It's like the Blake poem, you know, about there's a tiger behind one door and a lady behind the other. If you knew there was a tiger behind the door, you know, someone says, don't go in that door. You say, no, that's okay. I've been through a lot of doors. If you don't know what your rights are, how can you say, I don't need you to tell me about them? I think the answer to that question in this case, Your Honor, goes back to what the defendant said to Judge Jones at the original FREDA warning on perils. He said, I appreciate that, Your Honor. The defendant had just been warned of the perils of self-representation. And the defendant's own words were, I appreciate that, Your Honor. That appreciation didn't dissipate. Thank you. Thank you, counsel. We appreciate your argument. You have a few minutes of rebuttal. Whatever else can be said about the record made at the change of plea hearing, there was no mention whatsoever of count 15, maximum penalties, the fine, imprisonment, the elements, anything. What happened as to that count was that after the judge had already accepted the defendant's plea, he said, oh, yeah, and you filed a false tax return, too. And Mr. Cabella said, yes. But that's it. There was nothing else there. So whatever counsel may say about the adequacy of the record, it cannot go to that count, clearly. Another point I'd like to make is that issue is being reviewed on the trial court's denial of a motion to withdraw a plea procedurally. Actually, that's how that issue is in front of us, isn't it? I beg your pardon? That's how that issue is in front of us. In other words, what's being reviewed is the trial court's denial of a motion to withdraw the plea. Yes. That's a tough standard of review, isn't it? Well, the grounds on which the motion to withdraw were brought below should not hold it to handcuff this court because the error was plain and can be raised for the first time on appeal. The fact that there was error in the taking of the plea was essentially conceded by the prosecution. Again, reading between the lines, it is very obvious that the trial court was not interested in letting the plea be withdrawn under any circumstances. A modest record was made that there would be inconvenience to the State, but it was made after the plea, after the judge had already denied the motion to withdraw or rather denied the motion for Mr. Gabella to proceed, the court denied a continuance and then made a record after that as to why that was being done. The State, the prosecution continues to refer to the record of the 27th as somehow curing the record of the 17th, but the Collins case is instructive there where the indictment, when in fact it was the superseding indictment, and after it came back into court and made the record clear, the court offered him the chance to replead. If that had been done here, we wouldn't be here today. Thank you. Thank you, counsel. Thank you, counsel. The matter is submitted at this time.
judges: Tigar, Paez, Ikuta